```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
ARTHUR PROPERTIES S.A., and                           :
OLEKSANDR SAVCHUK                                     :
                            Plaintiffs,               :    11 Civ. 4409 (LAK) (THK)
                                                      :
            -against-                                 :    [PROPOSED]
                                                      :    SECOND AMENDED COMPLAINT
ABA GALLERY, INC., d/b/a ABA                          :
GALLERY; ANATOLY BEKKERMAN,                           :    JURY TRIAL DEMANDED
and JOHN DOES No. 1 through 100, such                 :
persons being unknown to plaintiff                    :
at this time,                                         :
                                                      :
                            Defendants.               :
------------------------------------------------------x
```

Plaintiffs, ARTHUR PROPERTIES S.A. ("Arthur Properties"), and OLEKSANDR SAVCHUK ("Savchuk"), by and through their attorneys, Fox Horan & Camerini LLP, 825 Third Avenue, New York, New York 10022, as and for their Second Amended Complaint against ABA GALLERY, INC., d/b/a ABA GALLERY (jointly and separately, "ABA"), and ANATOLY BEKKERMAN ("Bekkerman"), and JOHN DOES 1 through 100, known and unknown, allege as follows:

## PARTIES

1. Plaintiff Arthur Properties is a corporation created and existing under the laws of the Grand Duchy of Luxembourg, with its principal place of business at 16, Avenue Pasteur, L-2310, Luxembourg.

2. Plaintiff Savchuk is an individual, and is a citizen and resident of the country of

Ukraine. Savchuk controls, and is an owner of, Arthur Properties.

3. Defendant ABA GALLERY, INC., is, on information and belief, a corporation created and existing under the laws of the State of New York, with its principal place of business at 7 East 17th Street, New York, New York 10003. On information and belief, Defendant ABA GALLERY, INC., conducts business under the trade name ABA GALLERY.

4. Defendant Bekkerman is an individual, and, on information and belief, a citizen and resident of the State of New York, with his business address at 7 East 17th Street, New York, New York 10003. On information and belief, Defendant Bekkerman controls and is a principal of Defendant ABA.

5. Defendants JOHN DOES 1 through 100 are individuals, companies, corporations, organizations, art dealerships, partnerships and/or business associations, with identities presently unknown to Plaintiff, who are diverse to Plaintiff within the meaning and requirements of 28 U.S.C. § 1332, and who participated in the acts and omissions described in this Complaint, acting as agents, joint-venturers, and/or conspirators with the other Defendants identified hereinabove. Specifically, and without limitation, such JOHN DOE Defendants participated in the scheme to defraud Plaintiff by creating, concealing, disseminating, marketing, transferring title to, and selling the forged art in question, or conspired to do any of the above, and who, once identified, would be liable to Plaintiff for the acts alleged herein. When the identities and specific roles of the JOHN DOE Defendants become known to Plaintiff, Plaintiff will ask leave of Court to amend this Complaint in order to set forth that information with specificity.

2

## JURISDICTION AND VENUE

6.  Jurisdiction is appropriate in this Court under 28 U.S.C. § 1332 (Diversity Jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs.

7.  Venue is proper in this district under 28 U.S.C. 1391(a).

## FACTS COMMON TO ALL GROUNDS

8.  ABA is an art gallery specializing in 19th and 20th century Russian art. According to its website, "for over thirty years ABA Gallery has been dealing in the finest examples of nineteenth and early twentieth century Russian painting and sculpture." "During that time, the gallery has placed important and rare works of art in major public and private collections throughout Europe and the United States."

9.  At various times during 2007 and 2008, Savchuk purchased from Defendants ABA and Bekkerman a series of paintings purported to be by famous Russian artists ("Russian Paintings").

10. The Russian Paintings were purchased by Savchuk for his and his family's personal use and enjoyment.

11. Savchuk had arranged for a portion of the purchase price for the Russian Paintings to be paid through two Luxembourg corporations that he controlled: Kahdena Ventures Corp., and Brooke Ventures Limited. Neither of these corporations ever owned the Russian Paintings; they were merely Savchuk's payment vehicles. Unsolicited, ABA issued two invoiced to Kahdena Venture Limited for some of the Russian Paintings.

12. Subsequent to the purchase, the Russian Paintings were transferred by Savchuk to

3

Arthur Properties. Arthur Properties presently holds title to the Russian Paintings. On August 25, 2011, Savchuk and Arthur Properties executed an Assignment of Claim, pursuant to which all of Savchuk's claims against ABA and Bekkerman are assigned to Arthur Properties. The Assignment of Claim is annexed to this complaint as <u>Exhibit A</u>.

13.   The Russian Paintings purchased by Savchuk from Defendants were as follows:

a)   Ivan Aivazovsky, "*Seascape with Peter the Great.*" Oil on canvas, 190 x 295 centimeters. The purchase price paid for this painting by Plaintiff was $4,000,000.

b)   Ivan Shishkin, "*In the Woods.*" Oil on canvas, 97 x 72 centimeters. The purchase price paid for this painting by Plaintiff was $1,000,000.

c)   Stepan Bakalovich, "*Dinner Party.*" Oil on canvas, 73 x 98 centimeters. The purchase price paid for this painting by Plaintiff was $150,000.

d)   Konstantin Korovin, "*At the River.*" Oil on canvas, 64 x 81 centimeters. The purchase price paid for this painting by Plaintiff was $760,000.

e)   Ivan Choultze, "*Boat on a Lake.*" Oil on canvas, 54 x 64 centimeters. The purchase price paid for this painting by Plaintiff was $150,000.

f)   Aleksandr Altman, "*Flowers.*" Oil on canvas, 45 x 37.5 centimeters. The purchase price paid for this painting by Plaintiff was $60,000.

g)   Aleksandr Altman, "*On the Lake.*" Oil on canvas, 81 x 98 centimeters. The purchase price paid for this painting by Plaintiff was $75,000.

h)   David Burliuk, "*Winter Ride.*" Oil on canvas, 45 x 115 centimeters. The purchase price paid for this painting by Plaintiff was $150,000.

4

i) Aleksey Issupov, "*Still Life with Flowers.*" Oil on canvas, 80 x 65 centimeters. The purchase price paid for this painting by Plaintiff was $240,000.

j) Issak Pailes, "*Flowers.*" Oil on canvas, 53 x 64 centimeters. The purchase price paid for this painting by Plaintiff was $25,000.

k) Mikhail Larionov, "*Sleeping Dog in the Woods.*" Oil on canvas, 65 x 54 centimeters. The purchase price paid for this painting by Plaintiff was $300,000.

l) Konstantin Westchiloff, "*Woman Sorting Flowers.*" Oil on canvas, 37 x 51 centimeters. The purchase price paid for this painting by Plaintiff was $70,000.

m) Aleksandr Archipenko, "*Portrait of Wife.*" Oil on canvas, 56 x 45 centimeters. The purchase price paid for this painting by Plaintiff was $300,000.

n) Aleksandr Archipenko, "*Nude Blonde.*" Oil on canvas, 57 x 46 centimeters. The purchase price paid for this painting by Plaintiff was $350,000.

o) Genrikh Semiradsky, "*Roman Family at Leisure.*" Oil on canvas, 130 x 81 centimeters. The purchase price paid for this painting by Plaintiff was $1,000,000.

p) Natalia Goncharova, "*Magnolias.*" Oil on canvas, 130 x 85 centimeters. The purchase price paid for this painting by Plaintiff was $250,000.

q) Konstantin Gorbatov, "*Capri.*" Oil on canvas, 80 x 100 centimeters. The purchase price paid for this painting by Plaintiff was $450,000.

r) Ivan Aivazovsky, "*Seaside at the Crimea.*" Oil on canvas, 17 x 28 centimeters. The purchase price paid for this painting by Plaintiff was $250,000.

14. Commencing in the fall of 2006 and continuing through the first half of 2007,

Defendant Bekkerman, assisted by other persons, engaged in a multi-pronged and multi-faceted intensive campaign to defraud Savchuk. The goal of the scheme was to persuade Savchuk, who resides in the Ukraine, and who possesses no expertise in art, to purchase from Bekkerman what Bekkerman represented, in his capacity as a Russian art expert, to be valuable artworks located in his gallery in New York – paintings of which several were forgeries and others of substantially lesser value than Bekkerman had represented.

15. To assist him in this scheme, Bekkerman enlisted persons who knowingly or unknowingly, facilitated Bekkerman's fraud. The persons involved were Michael and Sorina Abramovich, wealthy former residents of Russia, currently residing in Paris; their daughter, Regina Abramovich, who resides in New York and holds the position of Consultant, Private Client Group, Russian Art, at Sotheby's in New York; and Bekkerman's own daughter, Sonya Bekkerman, who resides in New York and holds the position of Senior Vice President, Russian Paintings, at Sotheby's in New York.

16. Bekkerman's scheme consisted of numerous communications, telephone calls and personal visits to Europe, all designed and intended, first, to convince Savchuk of Bekkerman's credentials as a reputable and honest art dealer and an expert in Russian art, and, second, to convince Savchuk that he was offering genuine, authentic paintings at a price that reflected, according to Bekkerman, their fair present market value.

17. Bekkerman was first introduced to Savchuk through Michael and Sorina Abramovich, who were neighbors of Savchuk's daughter and son-in-law in Paris. Both of them vouched for Bekkerman's integrity and reputation within the Russian art world, and both emphasized, especially, that his daughter was the head of the Russian Paintings Department at Sotheby's, the world-renowned

6

auction house. They emphasized that their daughter too was working at Sotheby's in the Russian Paintings Department together with Bekkerman's daughter. Both Abramovichs urged Savchuk to trust Bekkerman. They also invited Savchuk and his family to the weddings of two of their children in Europe, at which Bekkerman was also present (with his daughter) and which he used as an opportunity to solicit Savchuk's purchase of the Russian Paintings.

18. Bekkerman himself, upon making contact with Savchuk and multiple times thereafter, stressed repeatedly his daughter's Sotheby's connection. By so invoking the name of Sotheby's, Bekkerman, with the assistance of the Abramovichs and his daughter, sought to create for himself an aura of respectability and unimpeachable credentials. In an effort to induce trust on Savchuk's part, Bekkerman told him that he would never risk his daughter's reputation and status by being anything but scrupulously honest in his dealings. Implicit in Bekkerman's pitch was that the art work he was selling had been "blessed" by his daughter and, by extension, by Sotheby's. For obvious reasons, this carried a great deal of weight with Savchuk.

19. After several months of concerted pressure from Bekkerman, and those assisting him, Savchuk decided to trust Bekkerman and purchase the Russian Paintings. At that time, Savchuk had seen only photographs of the Russian Paintings, these having been shown to him by Bekkerman in Europe. The paintings themselves were represented by Bekkerman to be in New York, with the exception of the works by Semiradsky, which was located in the Abramovichs' apartment in Paris, and Gorbatov, which was delivered by Bekkerman's representative to Paris.

20. Savchuk made payment for the Russian Paintings by wire to Bekkerman's designated bank accounts in the total amount of $9,580,000. With the exception of Semiradsky, which was picked up by Plaintiff from the Abramovichs' Paris apartment, and Gorbatov, which was delivered to

7

Paris, the remaining paintings were shipped by Bekkerman and ABA from New York to Plaintiff in Luxembourg in 2008. See Exhibit B, annexed hereto.

21. Bekkerman at all times represented to Savchuk that (a) each of the Russian Paintings was authentic, *i.e.*, that their authorship was as represented by Bekkerman; and (b) that the purchase price quoted by Bekkerman for each of the paintings represented the fair market value of the painting at the time. See, e.g., Exhibits B and C, annexed hereto.

22. Savchuk agreed to purchase the Russian Paintings based upon Bekkerman's representations that they were authentic as to their authorship and that their individual purchase price represented their fair market value.

23. Sometime after the delivery of the Russian Paintings to Savchuk, he discovered that four of the Russian Paintings were not authentic in their authorship, having been painted by persons other than as represented by Bekkerman. These paintings are: (a) Genrikh Semiradsky, "*Roman Family at Leisure*"; (b) Ivan Shishkin, "*In the Woods*"; (c) Stepan Bakalovich, "*Dinner Party*"; and (d) Natalia Goncharova, "*Magnolias*" (the "Inauthentic Paintings"). The total amount paid to Defendants by Plaintiff for the Inauthentic Paintings was $2,400,000.

24. Savchuk made demands to Defendants to have the purchase price for the Inauthentic Paintings returned. The demands have been rejected by Defendants.

25. After taking possession of the Russian Paintings Savchuk also discovered that Bekkerman had greatly misrepresented – and overstated – the market value of the authentic Russian Paintings. Specifically:

    a) Ivan Aivazovsky's "*Seascape with Peter the Great*" was overstated by

8

approximately 80%;

b) Ivan Choultze's "*Boat on a Lake*" was overstated by approximately 33%;

c) Aleksandr Altman's "*Flowers*" was overstated by approximately 41.7%;

d) Aleksandr Altman's "*On the Lake*" was overstated by approximately 53%;

e) David Burliuk's "*Winter Ride*" was overstated by approximately 50%;

f) Aleksey Issupov's "*Still Life with Flowers*" was overstated by approximately 66%;

g) Issak Pailes's "*Flowers*" was overstated by approximately 20%;

h) Mikhail Larionov's "*Sleeping Dog in the Woods*" was overstated by approximately 50%;

i) Konstantin Westchiloff's "*Woman Sorting Flowers*" was overstated by approximately 43%;

j) Aleksandr Archipenko's "*Portrait of Wife*" was overstated by approximately 67%;

k) Aleksandr Archipenko's "*Nude Blonde*" was overstated by approximately 66%;

l) Konstantin Gorbatov's "*Capri*" was overstated by approximately 44%; and

m) Ivan Aivazovsky's, "*Seaside at the Crimea*" was overstated by approximately 68%.

26. The total amount by which the market value of the Russian Paintings (authentic ones) was overstated by Bekkerman is approximately $4.1 million.

9

## AS AND FOR A FIRST CLAIM

### (Breach of Contract)

27. Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

28. Savchuk and Defendants had entered into a purchase and sale agreement, whereby Defendants agreed to sell to Savchuk the Russian Paintings, as these were represented by Defendants, and, for his part, Savchuk, in consideration, agreed to pay to Defendants the sum of $9,580,000.

29. In accordance with the agreement, Savchuk paid to Defendants the sum of $9,580,000. Savchuk has thus fully performed under the agreement.

30. Defendants breached the agreement by failing to deliver the Russian Paintings, as represented by them, delivering instead (a) paintings that were not painted by the artists represented, and (b) paintings whose market value was greatly lower than was represented by Defendants.

31. By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from Defendants the sum of not less than $6,500,000.

## AS AND FOR A SECOND CLAIM

### (Unjust Enrichment / Quasi Contract)

32. Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

33. In the alternative, Plaintiffs plead that Defendants have benefitted at Plaintiffs' expense by receiving from Savchuk the sum of $6,500,000.

34. Equity and good conscience requires that Defendants pay restitution to Plaintiffs in

the amount of the difference between the market value of the Russian Paintings, as represented by them, and the value of the actual artworks received by Savchuk from Defendants.

35. By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from Defendants an amount to be determined at trial but in no event less than $6,500,000.

## AS AND FOR A THIRD CLAIM

(Fraudulent Inducement)

36. Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

37. Defendants misrepresented to Savchuk that the Russian Paintings were authentic as to the claimed authorship, and also represented that the market value of the Russian Paintings was as represented by Bekkerman. *See, e.g.,* Exhibits B and C, annexed hereto.

38. These misrepresentations were made by Defendants knowingly and with the intent that Savchuk rely on them in making the decision to enter into the transaction.

39. Savchuk did rely on Defendants' misrepresentations, above, to his detriment, in making the decision to purchase the Paintings.

40. Savchuk's reliance was reasonable and justified.

41. By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from Defendants the sum of $6,500,000.

11

## AS AND FOR A FOURTH CLAIM

(Conspiracy to Defraud)

42. Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

43. Upon information and belief, Bekkerman, ABA and John Doe Defendants conspired to perpetrate fraud on Plaintiff Savchuk.

44. Upon information and belief a corrupt agreement existed among Bekkerman, ABA and John Doe Defendants to induce Savchuk to purchase the Russian Paintings, by means of misrepresentations, omissions and concealments concerning the authorship, authenticity and market value of the paintings, as set forth herein.

45. Upon information and belief, multiple overt acts were taken by Defendants, as well as by the yet unnamed John Doe Defendants, in furtherance of the conspiracy. Such overt acts include, without limitation, and in addition to the acts set forth in this Complaint, the creation, concealment, dissemination, transfer and sale of the Inauthentic Paintings, as well as the participation and sharing in the proceeds of such wrongful actions.

46. Upon information and belief, each of the Defendants, including the as yet unnamed John Doe Defendants, intentionally participated in the scheme to defraud Savchuk with the common plan and purpose.

47. By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from Defendants the sum of not less than $6,500,000.

12

## AS AND FOR A FIFTH CLAIM

(Negligent Misrepresentation)

48. Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

49. In connection with the transaction, Defendants stood in a special position of trust and confidence with Savchuk, such that Savchuk's reliance on Defendants' representations as to the authorship, authenticity and market value of the Russian Paintings was fully justified. By reason of this special position, there existed a privity-like relationship between Defendants and Savchuk.

50. Defendants had superior knowledge of the authenticity and market value of the Russian Paintings, a knowledge that Savchuk did not and could not have. This information was also not a matter of public record.

51. The information provided by Defendants to Savchuk concerning the authorship, authenticity and market value of the Russian Paintings was materially incorrect.

52. Plaintiffs plead in the alternative that Defendants were negligent in providing this incorrect information to Savchuk.

53. Savchuk reasonably relied on the incorrect information provided by Defendants as to the authorship, authenticity and market value of the Russian Paintings. Defendants knew at all times that Savchuk was acting on the basis of the information that was provided to him by Defendants concerning the authorship, authenticity and market value of the Russian Paintings.

54. Defendants owed to Savchuk a duty to disclose the truth concerning the authorship, authenticity and market value of the Russian Paintings.

55. By reason of the foregoing, Plaintiffs have been damaged and is entitled to recover

13

from Defendants the sum of $6,500,000.

## AS AND FOR A SIXTH CLAIM

(Breach of Express Warranty)

56. Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

57. In the alternative, Defendants, as sellers of the Russian Paintings, made affirmations of fact as to the authorship and authenticity of the Paintings.

58. These affirmations of fact were false.

59. The natural tendency of these false affirmations of fact was to induce the Savchuk to purchase the Russian Paintings.

60. The foregoing conduct constitutes breach by Defendants of an express warranty concerning the authorship and authenticity of the Russian Paintings.

61. By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from Defendants the sum of not less than $2,400,000.

## AS AND FOR A SEVENTH CLAIM

(Rescission Based on Fraudulent Inducement)

62. Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

63. In the alternative, as stated above, Defendants made knowing misrepresentations of material fact concerning the authorship, authenticity and market value of the Russian Paintings.

64. These misrepresentations were intended by Defendants to deceive Savchuk as to

14

the matters represented.

65. These misrepresentations were intended to and did in fact induce Savchuk to purchase the Russian Paintings.

66. Plaintiffs have no adequate remedy at law.

67. By reason of the foregoing, Plaintiffs have been damaged and are entitled to the remedy of rescission of the agreement between Defendants and Plaintiffs.

## AS AND FOR AN EIGHTH CLAIM

(Rescission Based on Mutual Mistake)

68. Plaintiffs repeat and realleges all prior allegations as if fully set forth herein.

69. In the alternative, Plaintiffs are entitled to a rescission of the agreement based on mutual mistake, insofar as neither Savchuk nor Defendants were aware of the false authorship or true market value of Russian Paintings at the time when they entered into the agreement.

70. Plaintiffs have no adequate remedy at law.

71. By reason of the foregoing, Plaintiffs have been damaged and are entitled to the remedy of rescission of the agreement between Defendants and Plaintiffs.

WHEREFORE, Plaintiffs demand judgment as follows:

A. On the First Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $6,500,000;

B. On the Second Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $6,500,000;

15

C.     On the Third Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $6,500,000;

D.     On the Fourth Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $6,500,000;

E.     On the Fifth Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $6,500,000.

F.     On the Sixth Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $2,400,000.

G.     On the Seventh Claim for Relief, for rescission of the agreement between Plaintiffs and Defendants;

H.     On the Eighth Claim for Relief, for rescission of the agreement between Plaintiffs and Defendants;

I.     Punitive damages against all Defendants as may be allowed under the applicable law in the amount to be determined by the Court;

J.     Applicable prejudgment interest on the amount of the judgment, costs and attorney's fees; and

K.     Such other and further relief as the Court may deem just and equitable under the circumstances.

16

Dated:   New York, New York
         September ____, 2011

                              FOX HORAN & CAMERINI LLP
                              *Attorneys for the Plaintiffs*

                        By: _____
                            Oleg Rivkin
                            825 Third Avenue
                            New York, New York 10022
                            (212) 480-4800