UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
ARTHUR PROPERTIES S.A. and                            :
OLEKSANDR SAVCHUK                                     :
                              Plaintiffs,             :     **11 Civ. 4409 (LAK) (THK)**
                                                      :
            -against-                                 :
                                                      :     **THIRD AMENDED COMPLAINT**
ABA GALLERY, INC., d/b/a ABA                          :
GALLERY; ANATOLY BEKKERMAN,                           :     **JURY TRIAL DEMANDED**
and JOHN DOES Nos. 1 through 100, such                :
persons being unknown to plaintiff                    :
at this time,                                         :
                                                      :
                              Defendants.             :
------------------------------------------------------x

Plaintiffs, ARTHUR PROPERTIES S.A. ("Arthur Properties") and OLEKSANDR

SAVCHUK ("Savchuk"), by and through their attorneys, Fox Horan & Camerini LLP, 825

Third Avenue, New York, New York 10022, as and for their Third Amended Complaint against

ABA GALLERY, INC., d/b/a ABA GALLERY (jointly and separately, "ABA"), ANATOLY

BEKKERMAN ("Bekkerman"), and JOHN DOES 1 through 100, known and unknown, allege as

follows:


## PARTIES

1.      Plaintiff Arthur Properties is a corporation created and existing under the laws of

the Grand Duchy of Luxembourg, with its principal place of business at 16, Avenue Pasteur, L-

2310, Luxembourg.

2.      Plaintiff Savchuk is an individual, and is a citizen and resident of the country of

Ukraine.  Savchuk controls, and is an owner of, Arthur Properties.

3.      Defendant ABA GALLERY, INC., is, on information and belief, a corporation created and existing under the laws of the State of New York, with its principal place of business at 7 East 17th Street, New York, New York 10003.  On information and belief, Defendant ABA GALLERY, INC., conducts business under the trade name ABA GALLERY.

4.      Defendant Bekkerman is an individual, and, on information and belief, a citizen and resident of the State of New York, with his business address at 7 East 17th Street, New York, New York 10003.  On information and belief, Defendant Bekkerman controls and is a principal of Defendant ABA.

5.      Defendants JOHN DOES 1 through 100 are individuals, companies, corporations, organizations, art dealerships, partnerships and/or business associations, with identities presently unknown to Plaintiffs, who are diverse to Plaintiffs within the meaning and requirements of 28 U.S.C. § 1332, and who participated in the acts and omissions described in this Complaint, acting as agents, joint-venturers, and/or conspirators with the other Defendants identified hereinabove.  Specifically, and without limitation, such JOHN DOE Defendants participated in the scheme to defraud Plaintiffs by creating, concealing, disseminating, marketing, transferring title to, and selling the forged art in question, or conspired to do any of the above, and who, once identified, would be liable to Plaintiffs for the acts alleged herein.  When the identities and specific roles of the JOHN DOE Defendants become known to Plaintiffs, Plaintiffs will ask leave of Court to amend this Complaint in order to set forth that information with specificity.

## JURISDICTION AND VENUE

6.      Jurisdiction is appropriate in this Court under 28 U.S.C. § 1332 (Diversity Jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this district under 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL GROUNDS

8.      ABA is an art gallery specializing in 19th and 20th century Russian art.  According to its website, "for over thirty years ABA Gallery has been dealing in the finest examples of nineteenth and early twentieth century Russian painting and sculpture." "During that time, the gallery has placed important and rare works of art in major public and private collections throughout Europe and the United States."

9.      At various times during 2007 and 2008, Savchuk purchased from Defendants ABA and Bekkerman a series of paintings purported to be by famous Russian artists (the "Russian Paintings").

10.      The Russian Paintings were purchased by Savchuk for his and his family's personal use and enjoyment.

11.      Savchuk had arranged for a portion of the purchase price for the Russian Paintings to be paid through two Luxembourg corporations that he controlled: Kahdena Ventures Corp., and Brooke Ventures Limited.  Neither of these corporations ever owned the Russian Paintings; they were merely Savchuk's payment vehicles.  Unsolicited, ABA issued two invoices to Kahdena Ventures Corp. for some of the Russian Paintings.

12.      Subsequent to the purchase, the Russian Paintings were transferred by Savchuk to Arthur Properties.  Arthur Properties presently holds title to the Russian Paintings.  On August 25,

2011, Savchuk and Arthur Properties executed an Assignment of Claim, pursuant to which all of

Savchuk's claims against ABA and Bekkerman are assigned to Arthur Properties.  The

Assignment of Claim is annexed to this complaint as Exhibit A.

          13.     The Russian Paintings purchased by Savchuk from Defendants were as follows:

          (a)     Ivan Aivazovsky, "*Seascape with Peter the Great.*"  Oil on canvas, 190 x 295 centimeters.  The purchase price paid for this painting by Plaintiffs was $4,000,000.

          (b)     Ivan Shishkin, "*In the Woods.*"  Oil on canvas, 97 x 72 centimeters. The purchase price paid for this painting by Plaintiffs was $1,000,000.

          (c)     Stepan Bakalovich, "*Dinner Party.*"  Oil on canvas, 73 x 98 centimeters. The purchase price paid for this painting by Plaintiffs was $150,000.

          (d)     Konstantin Korovin, "*At the River.*"  Oil on canvas, 64 x 81 centimeters. The purchase price paid for this painting by Plaintiffs was $760,000.

          (e)     Ivan Choultze, "*Boat on a Lake.*"  Oil on canvas, 54 x 64 centimeters.  The purchase price paid for this painting by Plaintiffs was $150,000.

          (f)     Aleksandr Altman, "*Flowers.*"  Oil on canvas, 45 x 37.5 centimeters.  The purchase price paid for this painting by Plaintiffs was $60,000.

          (g)     Aleksandr Altman, "*On the Lake.*"  Oil on canvas, 81 x 98 centimeters. The purchase price paid for this painting by Plaintiffs was $75,000.

          (h)     David Burliuk, "*Winter Ride.*"  Oil on canvas, 45 x 115 centimeters. The purchase price paid for this painting by Plaintiffs was $150,000.

          (i)     Aleksey Issupov, "*Still Life with Flowers.*"  Oil on canvas, 80 x 65 centimeters.  The purchase price paid for this painting by Plaintiffs was

$240,000.

(j)     Issak Pailes, "*Flowers.*"  Oil on canvas, 53 x 64 centimeters.  The purchase

price paid for this painting by Plaintiffs was $25,000.

(k)     Mikhail Larionov, "*Sleeping Dog in the Woods.*"  Oil on canvas, 65 x 54

centimeters.  The purchase price paid for this painting by Plaintiffs was

$300,000.

(l)     Konstantin Westchiloff, "*Woman Sorting Flowers.*"  Oil on canvas, 37 x

51 centimeters.  The purchase price paid for this painting by Plaintiffs was

$70,000.

(m)    Aleksandr Archipenko, "*Portrait of Wife.*"  Oil on canvas, 56 x 45

centimeters.  The purchase price paid for this painting by Plaintiffs was

$300,000.

(n)     Aleksandr Archipenko, "*Nude Blonde.*"  Oil on canvas, 57 x 46

centimeters.  The purchase price paid for this painting by Plaintiffs was

$350,000.

(o)     Genrikh Semiradsky, "*Roman Family at Leisure.*"  Oil on canvas, 130 x

81 centimeters.  The purchase price paid for this painting by Plaintiffs

was $1,000,000.

(p)     Natalia Goncharova, "*Magnolias.*"  Oil on canvas, 130 x 85 centimeters.

The purchase price paid for this painting by Plaintiffs was $250,000.

(q)     Konstantin Gorbatov, "*Capri.*"  Oil on canvas, 80 x 100 centimeters.  The

purchase price paid for this painting by Plaintiffs was $450,000.

(r)     Ivan Aivazovsky, "*Seaside at the Crimea.*"  Oil on canvas, 17 x 28

centimeters.  The purchase price paid for this painting by Plaintiffs was $250,000.

14.      Commencing in the summer of 2006 and continuing through the fall of 2007, Defendant Bekkerman, assisted by other persons including various of the John Doe Defendants, engaged in a multi-pronged and multi-faceted intensive campaign to defraud Savchuk.  The goal of the scheme was to persuade Savchuk, who resides in the Ukraine, and who possesses no expertise in art, to purchase from Bekkerman what Bekkerman represented, in his capacity as a Russian art expert, to be valuable artworks located in his gallery in New York – paintings of which several were forgeries and others of substantially lesser value than Bekkerman had represented.

15.      To assist him in this scheme, Bekkerman enlisted persons including various of the John Doe Defendants who knowingly or unknowingly facilitated Bekkerman's fraud.  Among the persons involved were Michael and Sorina Abramovich, wealthy former residents of Russia, currently residing in Paris; their daughter, Regina Abramovich, who resides in New York and holds the position of Consultant, Private Client Group, Russian Art, at Sotheby's in New York; and Bekkerman's own daughter, Sonya Bekkerman, who resides in New York and holds the position of Senior Vice President, Russian Paintings, at Sotheby's in New York.

16.      Bekkerman's scheme consisted of numerous communications, telephone calls and personal visits to Europe, all designed and intended, first, to convince Savchuk of Bekkerman's credentials as a reputable and honest art dealer and an expert in Russian art and its valuation, and second, to convince Savchuk that he was offering genuine, authentic paintings at a price that reflected, according to Bekkerman, their fair present market value.

17.      Bekkerman was first introduced to Savchuk through Michael and Sorina Abramovich, who were neighbors of Savchuk's daughter and son-in-law in Paris.  Both of them vouched for

6

Bekkerman's integrity and reputation within the Russian art world, and both especially emphasized that his daughter was the head of the Russian Paintings Department at Sotheby's, the world-renowned auction house. They emphasized that their daughter, too, was working at Sotheby's in the Russian Paintings Department together with Bekkerman's daughter. Both Abramovichs urged Savchuk to trust Bekkerman. They also invited Savchuk and his family to the weddings of two of their children – which took place in the early summer of 2006 and in the fall of 2007, in London – at both of which Bekkerman was also present (with his daughter) and which he used to solicit Savchuk's purchase of the Russian Paintings.

18.     At both of the Abramovich children's weddings, Bekkerman showed Savchuk photographs of the Russian Paintings and explained to Savchuk what he claimed to be their authorship and their market value. Bekkerman spoke at length about the painters who he claimed had authored the paintings, explaining to Savchuk their history and what he claimed to be the value of the works in the art market. Bekkerman, with his daughter at his side, vouched to Savchuk for the authenticity of the paintings. When Savchuk said he would like to have the paintings analyzed by an expert, both for their authenticity and value, Bekkerman strongly argued that this was not necessary, that he, Bekkerman, was a reputable art dealer who is trusted by his clients and that he staked his and his daughter's reputations on dealing in authentic paintings and never cheating his clients.

19.     At both of the Abramovich children's weddings and multiple times thereafter in telephone conversations Bekkerman stressed repeatedly his daughter's Sotheby's connection. By so invoking the name of Sotheby's, Bekkerman sought to create for himself an aura of respectability and unimpeachable credentials. Repeatedly, in an effort to induce trust on Savchuk's part, Bekkerman told him that he would never risk his daughter's reputation and status by being anything but scrupulously honest in his dealings. At one point during one of the Abramovich children's weddings,

Bekkerman said to Savchuk in words or substance: "Do you think I would I mislead you and put my and my daughter's reputation at risk?" Implicit in Bekkerman's pitch was that the art work he was selling had been "blessed" by his daughter and, by extension, by Sotheby's. For obvious reasons, this carried a great deal of weight with Savchuk.

20.    In an email dated March 12, 2007, Bekkerman set forth a partial list of the paintings he was seeking to sell to Savchuk. Exhibit B. Bekkerman's list included the names of the paintings, the purported authors of the paintings and the sales price, which Bekkerman claimed, both at the Abramovich children's weddings and in telephone conversations, to be the market value of the paintings.

21.    Subsequent to the March 12, 2007 email, Bekkerman had several conversations with Savchuk's son-in-law, Taras Polishchuk, who was authorized by Savchuk to deal with Bekkerman in connection with the paintings. These telephone conversations took place within several weeks of the March 12, 2007 email. In these conversations, Bekkerman again confirmed what he claimed to be the authorship of the paintings, as well as their market value, which he claimed was consistent with the price he was quoting. In one of these telephone conversations, which took place shortly after the March 12, 2007, email, Bekkerman again sought to dissuade Polishchuk and Savchuk from having the paintings examined by an expert. Bekkerman again stated that his name and reputation, as well as his daughter's reputation, should be sufficient.

22.    In an email dated January 31, 2008, Bekkerman set forth the complete list of the paintings he was seeking to sell to Savchuk. Exhibit C. This list included the names of the paintings, the purported authors of the paintings and the sales price, which Bekkerman claimed in prior conversations, both at the Abramovich children's weddings and in telephone conversations, to be the fair market value of the paintings.

8

23.     After several months of concerted pressure from Bekkerman and those assisting him, Savchuk decided to trust Bekkerman and purchase the Russian Paintings. At that time, Savchuk had seen only photographs of the Russian Paintings, these having been shown to him by Bekkerman in Europe. The paintings themselves were represented by Bekkerman to be in New York, with the exception of the works by Semiradsky, which was located in the Abramovichs' apartment in Paris, and Gorbatov, which was delivered by Bekkerman's representative to Paris.

24.     Savchuk and Defendants entered into a purchase and sale agreement, whereby Defendants agreed to sell to Savchuk the Russian Paintings, as these were represented by Defendants, and for his part, Savchuk, in consideration, agreed to pay to Defendants the sum of $9,580,000. Savchuk made payment for the Russian Paintings by wire to Bekkerman's designated bank accounts in the total amount of $9,580,000, and has thus fully performed under the agreement.

25.     With the exception of the Semiradsky painting, which was picked up by Plaintiff from the Abramovichs' Paris apartment, and the Gorbatov painting, which was delivered to Paris, the Russian Paintings were shipped by Bekkerman and ABA from New York to Plaintiff in Luxembourg in 2008.

26.     As set forth above, Bekkerman multiple times represented to Savchuk that (a) each of the Russian Paintings was authentic, *i.e.*, that their authorship was as represented by Bekkerman; and (b) that the purchase price quoted by Bekkerman for each of the paintings represented the fair market value of the painting at the time.

27.     On information and belief, at all times during the course of his dealings with Savchuk, Bekkerman knew that some of the Russian Paintings were not genuine, in that they were not painted by the artists Bekkerman claimed had painted them. Specifically, Bekkerman at all times knew that the following paintings were forgeries: (a) Genrikh Semiradsky, *"Roman Family at Leisure"*; (b)

Ivan Shishkin, "*In the Woods*"; (c) Stepan Bakalovich, "*Dinner Party*"; and (d) Natalia

Goncharova, "*Magnolias*." Bekkerman's knowledge of the forgeries is supported by the

following: (a) the fact that Bekkerman is, by his own claim, an expert in Russian art and must

have known of the authorship of the paintings; (b) the fact that he had sought to dissuade

Savchuk from conducting his own expert evaluation of the Russian Paintings; and (c) the fact

that an expert retained by Savchuk after receipt of the Russian Paintings was able to easily

determine that the four paintings, above, were forgeries.

28.      Savchuk agreed to purchase the Russian Paintings based upon Bekkerman's

representations that they were authentic as to their authorship and that their individual purchase

prices represented their respective fair market values.

29.      Sometime after the delivery of the Russian Paintings, Savchuk retained

Kunstberatung Zurich AG ("Kunstberatung"), a Switzerland firm that specializes, among other

things, in forensic analysis of artworks. After conducting an analysis of the Russian Paintings,

Kunstberatung Zurich AG concluded, in November-December 2008, that four of the Russian

Paintings were not authored by the painters represented by Bekkerman. This was the first time

that Savchuk discovered that four of the Russian Paintings were not authentic in their

authorship. As stated above, these paintings are: (a) Genrikh Semiradsky, "*Roman Family at*

*Leisure*"; (b) Ivan Shishkin, "*In the Woods*"; (c) Stepan Bakalovich, "*Dinner Party*"; and (d)

Natalia Goncharova, "*Magnolias*" (the "Inauthentic Paintings"). The total amount paid to

Defendants by Plaintiff for the Inauthentic Paintings was $2,400,000.

30.      Savchuk made demands to Defendants to have the purchase price for the

Inauthentic Paintings returned. The demands have been rejected by Defendants.

31.      After taking possession of the Russian Paintings, Savchuk also discovered that

Bekkerman had greatly overstated the market value of the authentic Russian Paintings. After realizing that he had been defrauded by Bekkerman as to the authenticity of the four paintings, Savchuk requested Kunstberatung to conduct an analysis of all of the Russian Paintings as to their market value at the time of the purchase. After an analysis, Kunstberatung concluded and reported to Savchuk that the values of the paintings were overstated by Bekkerman, as follows:

(a) Ivan Aivazovsky's *"Seascape with Peter the Great"* was overstated by approximately 80%;

(b) Ivan Choultze's *"Boat on a Lake"* was overstated by approximately 33%;

(c) Aleksandr Altman's *"Flowers"* was overstated by approximately 41.7%;

(d) Aleksandr Altman's *"On the Lake"* was overstated by approximately 53%;

(e) David Burliuk's *"Winter Ride"* was overstated by approximately 50%;

(f) Aleksey Issupov's *"Still Life with Flowers"* was overstated by approximately 66%;

(g) Issak Pailes's *"Flowers"* was overstated by approximately 20%;

(h) Mikhail Larionov's *"Sleeping Dog in the Woods"* was overstated by approximately 50%;

(i) Konstantin Westchiloff's *"Woman Sorting Flowers"* was overstated by approximately 43%;

(j) Aleksandr Archipenko's *"Portrait of Wife"* was overstated by approximately 67%;

(k) Aleksandr Archipenko's *"Nude Blonde"* was overstated by approximately 66%;

(l) Konstantin Gorbatov's *"Capri"* was overstated by approximately 44%;

and

(m)    Ivan Aivazovsky's, "*Seaside at the Crimea*" was overstated by

approximately 68%.

32.    The total amount by which the market value of the Russian Paintings (authentic ones)

was overstated by Bekkerman is approximately $4.1 million.

## AS AND FOR A FIRST CLAIM

### (Fraudulent Inducement)

33.    Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

34.    Defendants misrepresented to Savchuk and Polishchuk that the Russian

Paintings were authentic as to the claimed authorship.  As set forth above, these

misrepresentations were made by Bekkerman in the course of the two Abramovich children's

weddings in the summer of 2006 and fall of 2007, Bekkerman's emails of March 12, 2007, and

January 31, 2008, as well as telephone conversations.

35.    At all times when Bekkerman represented to Plaintiffs that the Russian Paintings

were authentic, he knew that the Inauthentic Paintings were forgeries, in that they were painted by

persons other than those represented by Bekkerman.  Bekkerman's knowledge is evidenced by the

following:  (a) the fact that Bekkerman is, by his own claim, an expert in Russian art and must

have known of the authorship of the paintings; (b) the fact that he had sought to dissuade

Savchuk from conducting his own expert evaluation of the Russian Paintings; and (c) the fact

that an expert retained by Savchuk after receipt of the Russian Paintings was able to easily

determine that the Inauthentic Paintings were forgeries.

36.    Because Bekkerman at all relevant times knew that the Inauthentic Paintings were

forgeries, in that they were painted by persons other than those represented by him, Bekkerman's misrepresentations were made by him knowingly and with the intent that Savchuk rely on them in making the decision to enter into the transaction.

37.     Savchuk did rely on Defendants' misrepresentations, above, to his detriment, in making the decision to purchase the Russian Paintings.

38.     Savchuk's reliance was reasonable and justified.

39.     By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from Defendants the sum of not less than $2,400,000.

## AS AND FOR A SECOND CLAIM

### (Conspiracy to Defraud)

40.     Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

41.     Upon information and belief, Bekkerman, ABA and John Doe Defendants conspired to perpetrate fraud on Plaintiff Savchuk.

42.     Upon information and belief a corrupt agreement existed among Bekkerman, ABA and John Doe Defendants to induce Savchuk to purchase the Russian Paintings, by means of misrepresentations, omissions and concealments concerning the authorship and authenticity, as set forth herein.

43.     Upon information and belief, multiple overt acts were taken by Defendants, as well as by the yet unnamed John Doe Defendants, in furtherance of the conspiracy.  Such overt acts include, without limitation, and in addition to the acts set forth in this Complaint, the creation, concealment, dissemination, transfer and sale of the Inauthentic Paintings, as well as the participation and sharing in the proceeds of such wrongful actions.

44.     Upon information and belief, each of the Defendants, including the as yet unnamed John Doe Defendants, intentionally participated in the scheme to defraud Savchuk with the common plan and purpose.

45.     By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from Defendants the sum of not less than $2,400,000.

## AS AND FOR A THIRD CLAIM

### (Breach of Express Warranty)

46.     Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

47.     Defendants, as sellers of the Russian Paintings, made affirmations of fact as to the authorship and authenticity of the Paintings.

48.     These affirmations of fact were false.

49.     The natural tendency of these false affirmations of fact was to induce Savchuk to purchase the Russian Paintings.

50.     The foregoing conduct, including the making of the false representations and the fact that they were false constitutes breach by Defendants of an express warranty concerning the authorship and authenticity of the Russian Paintings.

51.     By reason of the foregoing, Plaintiffs have been damaged and are entitled to recover from Defendants the sum of not less than $2,400,000.

## AS AND FOR A FOURTH CLAIM

### (Rescission Based on Fraudulent Inducement)

52.     Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

53.    In the alternative, as stated above, Defendants made knowing misrepresentations of material fact concerning the authorship, authenticity and market value of the Russian Paintings.

54.    These misrepresentations were intended by Defendants to deceive Savchuk as to the matters represented.

55.    These misrepresentations were intended to and did in fact induce Savchuk to purchase the Russian Paintings.

56.    Plaintiffs have no adequate remedy at law.

57.    By reason of the foregoing, Plaintiffs have been damaged and are entitled to the remedy of rescission of the agreement between Defendants and Plaintiffs with respect to the Inauthentic Paintings.

### AS AND FOR AN FIFTH CLAIM

(Rescission Based on Mutual Mistake)

58.    Plaintiffs repeat and reallege all prior allegations as if fully set forth herein.

59.    In the alternative, Plaintiffs are entitled to a rescission of the agreement based on mutual mistake, insofar as neither Savchuk nor Defendants were aware of the false authorship or true market value of the Russian Paintings at the time that they entered into the agreement.

60.    Plaintiffs have no adequate remedy at law.

61.    By reason of the foregoing, Plaintiffs have been damaged and are entitled to the remedy of rescission of the agreement between Defendants and Plaintiffs with respect to all of the Russian Paintings.

WHEREFORE, Plaintiffs demand judgment as follows:

A.      On the First Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $2,400,000;

B.      On the Second Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $2,400,000;

C.      On the Third Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $2,400,000;

D.      On the Fourth Claim for Relief, damages against Defendants, jointly and severally, in the amount of not less than $2,400,000;

E.      On the Fifth Claim for Relief, for rescission of the agreement between Plaintiffs and Defendants with respect to the Inauthentic Paintings;

F.      On the Sixth Claim for Relief, for rescission of the agreement between Plaintiffs and Defendants with respect to all Russian Paintings;

G.      Punitive damages against all Defendants as may be allowed under the applicable law in the amount to be determined by the Court;

H.      Applicable prejudgment interest on the amount of the judgment, costs and attorney's fees; and

K.      Such other and further relief as the Court may deem just and equitable under the circumstances.

Dated:     New York, New York
           December 12, 2011

                          FOX HORAN & CAMERINI LLP
                          *Attorneys for Plaintiffs*


                          By: _____
                              JooYun Kim
                              Oleg Rivkin
                              825 Third Avenue
                              New York, New York 10022
                              (212) 480-4800

# EXHIBIT A

## ASSIGNMENT OF CLAIM

This ASSIGNMENT OF CLAIM ("Assignment") is made this 25th of August, 2011, by and between Oleksandr Savchuk, a resident of the Ukraine, and Svitlana Savchuk, a resident of the Ukraine, as assignors (jointly, the "Assignor") and Arthur Properties, S.A., a corporation created and existing under the laws of the Grand Duchy of Luxembourg, as assignee ("Assignee"):

    1.    Reference is made to that certain purchase of art by Assignor at various times in 2007, from ABA Gallery, Inc. ("ABA") and Anatoly Bekkerman ("Art Purchase").

    2.    For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignor does hereby sell, transfer, assign, set over, deliver and convey unto the Assignee, all of the Assignor's right, title and interest in and to its claims against ABA and Anatoly Bekkerman arising out of the Art Purchase (the "ABA Claim").

    3.    The Assignee hereby accepts all of the Assignor's right, title and interest in and to the ABA Claim, and agrees to keep, perform and fulfill from and after the date hereof all of the terms, covenants and conditions required to be kept, performed and fulfilled, if any, by the Assignor under the ABA Claim.

    4.    The Assignor makes this assignment without recourse and does not make, has not made and shall not be deemed to have made any warranty or representation, express, implied or statutory, as to the effectiveness, validity, legality or enforceability of the ABA Claim.

    5.    This Assignment shall be governed by and construed in accordance with the law of the State of New York.

IN WITNESS WHEREOF, the parties have caused this Assignment and Assumption Agreement to be executed as of the 25th day of August, 2011.

ASSIGNOR:                                              ASSIGNEE :

OLEKSANDR SAVCHUK                       ARTHUR PROPERTIES, S.A.

                                                                By:

SVITLANA SAVCHUK

                                                                Ketrage Reksma.          Christian Tailleur
                                                                      Director                          Director

# EXHIBIT B

Начало переадресованного сообщения:

**От:** "ABA gallery" <abagallery@hotmail.com>
**Дата:** 12 марта 2007 03:19:37 GMT+01:00
**Кому:** tpolishchuk@azovmash.fr
**Тема: list of paintings**

Dear Taras

This is a list of paintings

1.K.Korovin ( At the river)---------$ 760 000

2.A.Issupov (Flowers )--------------$240 000

3.K Gorbatoff ( Capri)---------------$ 450 000

4.A.Altman  ( Flowers)--------------$ 60 000

5.A. Altman  ( Lake)---------------$75 000

6. D.Burliuk ( Winter ride)--------# 150 000

7.N. Gontcharova ( Magnolias)----$ 250 000

8.I. Pailes  ( Blue flowers)--------$25 000

9.H. Semiradsky ( Family resting)--- $ 1 000 000

10.A Archipenko ( Blonde Nude)-----$ 350 000

11.K.Westchiloff (Ship at sea)-------GIFT

12.B.Chaliapin ( Forest stream)------GIFT


   TOTAL:  $ 3 360 000

Thank you

Anatol

ABA Gallery

47 East 19th Street
New York, NY 10003
Tel: 212-677-2367
Fax: 212-677-2410
By Appointment Only

# EXHIBIT C

Начало переадресованного сообщения:

**От:** "Walter Ehrlich" <walter@ehrlichs.com>
**Дата:** 31 января 2008 06:27:11 GMT+01:00
**Кому:** '"????? ???????"' <tpolishchuk@azovmash.fr>
**Тема:** FW: sizes-prices-descriptions

---

**From:** ABA gallery [mailto:abagallery@hotmail.com]
**Sent:** Thursday, January 31, 2008 12:20 AM
**To:** walter ehrlch; anatol bekkerman
**Subject:** sizes-prices-descriptions

1.Aivazovsky-Seascape with Peter the Great -75+116inch-$4 000 000
2.Shishkin-Forest-50+41inch-$1 000 000
3.Bakalovich-Dinner Party- $150 000  43+53 inch
4.Korovin-Ships on the Ceine--$760 000---36+30 inch
5.Choultse-Boat on the lake-$150 000-34+31 inch
6.Altman-Flowers-$60 000-28+25
7.Altman-On the lake-$$75 000--39+46inch
8.Burliuk-Winter ride-$150 000-32+46inch
9.Issupov-Still life Flowers-$240 000---40+35inch
10.Pailes-Flowers-$25000----32+28inch
11.Larionov--Sleeping dog in thr woods--$300 000--35+30inch
12Westchiloff-Woman sorting flowers-$70 000
13. Archipenko--Portrait of wife-$ 300 00---32+26inch
14.Archipenko--Nude $ 350 000---32+26inch
15.Burliuk--Arles ---GIFT--Value $150 00025+53inch
16.Wesychiloff--Seascape-GIFT--Value-$50 000--20+23inch
17.Chaliapin--Forest stream--Gift Value $35 000-23+18 inches

18.Semiradsky-ALREADY IN PARIS
19.Goncharova-IN PARIS
20.Gorbatov-IN PARIS

p.s.# 15,16,17,-NO CHARGE_GIFTS!!!!!

Dear Walter
I have a good art transport company--CADOGAN TATE in NEW YORK and LONDON,let me
know,if you need it?
ABA Gallery 47 East 19th Street New York, NY 10003 Tel: 212-677-2367 Fax: 212-677-
2410 By Appointment Only

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR PROPERTIES, S.A. and
OLEKSANDR SAVCHUK

                                    Plaintiffs,

            -against-                              11 Civ. 4409 (LAK) (THK)

ABA GALLERY, INC., d/b/a ABA
GALLERY; ANATOLY BEKKERMAN,
and JOHN DOES Nos. 1 through 100, such
persons being unknown to plaintiff
at this time,

                                    Defendants

## THIRD AMENDED COMPLAINT
## JURY TRIAL DEMANDED

FOX HORAN & CAMERINI LLP
*Attorneys for* Plaintiffs

825 THIRD AVENUE
NEW YORK, NEW YORK 10022
(212) 480-4800