UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ARTHUR PROPERTIES, S.A., et ano.,

                              Plaintiffs,


              -against-                                                11 Civ. 4409 (LAK)


ABA GALLERY, INC., et ano.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION

              Appearances:


Oleg Rivkin                                   Steven M. Edwards
FOX HORAN & CAMERINI LLP                      Eva L. Dietz
                                              HOGAN LOVELLS US LLP
*Attorneys for Plaintiffs*
                                              Malcolm S. Taub
                                              DAVIDOFF MALITO & HUTCHER LLP

                                              *Attorneys for Defendants*



LEWIS A. KAPLAN, *District Judge.*

              In 2007 and 2008, Oleksandr Savchuk, acting through plaintiff Arthur Properties,

S.A. ("AP"), bought eighteen paintings from defendant ABA Gallery, Inc. ("ABA"), the principal

of which is defendant Anatol Bekkerman, for a total of $9,580,000. AP brings this action to recover

damages, essentially on the theories that ABA and Bekkerman misrepresented the "fair market

value" of the paintings and that four of them, contrary to representations by ABA and Bekkerman,

were not authentic. Defendants move to dismiss AP's first amended complaint. AP cross-moves

for leave to amend, essentially to add Savchuk as a plaintiff and thus to moot defendants' contention that AP lacks standing to sue.[1]

### Facts

The Court assumes the truth of the well-pleaded factual allegations of the second amended complaint for purposes of the motion.

### Parties

Savchuk is a citizen and resident of Ukraine who owns and controls AP.[2]

ABA is incorporated and has its principal place of business in New York.  It operates an art gallery specializing in 19th and 20th century Russian art and trades under the name ABA Gallery.[3]  Bekkerman also is a New Yorker; he controls and is a principal of ABA.[4]

### The Sale

During the fall of 2006 and the first half of 2007, Bekkerman sought to persuade Savchuk, who claims to possess no expertise with respect to art, to purchase artworks located in the

---

[1]   As there is no serious objection to the motion for leave to amend and as the parties have briefed the motions in terms entirely applicable to the proposed second amended complaint, the Court grants the cross-motion for leave to amend and deems the pending motion to dismiss applicable to the second amended complaint.

[2]   Second amended complaint ("cpt") ¶ 2.

[3]   *Id.* ¶¶ 3, 8.

[4]   *Id.* ¶ 4.

3

New York gallery which he allegedly represented were valuable.  In fact, according to plaintiffs, several of the artworks actually were forgeries and others were worth less than Bekkerman allegedly represented.[5]

In the course of "numerous" but entirely unspecified communications, phone calls and personal visits, Bekkerman sought to persuade Savchuk that he was a reputable and honest dealer and an expert on Russian art and to convince Savchuk that he was "offering genuine, authentic paintings at a price that reflected, according to Bekkerman, their fair present market value."[6]  Among the alleged means employed by Bekkerman was reference to the fact that his daughter worked for Sotheby's and an assertion that he would never risk her reputation and status by acting in a dishonest manner.[7]

After several months, Savchuk claims, he decided to trust Bekkerman and – acting sight unseen, but with the benefit of photographs – purchased the paintings for $9,580,000.[8] According to the complaint, "Bekkerman at all times represented to Savchuk that (a) each of the Russian Paintings was authentic, *i.e.*, that their authorship was as represented by Bekkerman; and (b) the purchase price quoted by Bekkerman for each of the paintings represented the fair market

---

[5] *Id.* ¶ 14.

[6] *Id.* ¶ 16; *see also id.* ¶¶ 17-18.

[7] *Id.* ¶ 18.

[8] *Id.* ¶¶ 19-20.

4

value of the painting at the time.'"[9]  Savchuk allegedly relied upon those representations.[10]

After taking delivery, Savchuk claims that he discovered that four of the paintings, for which he paid a total of $2,400,000, were not authentic.  He allegedly discovered also that the prices he paid for the other paintings were significantly higher than their market values.[11]

*The Complaint and the Motion*

The second amended complaint purports to assert eight claims for relief:  breach of contract, unjust enrichment, fraudulent inducement, conspiracy to defraud, negligent misrepresentation, breach of express warranty, rescission based on fraudulent inducement, and rescission based on mutual mistake.  Defendants maintain that the pleading fails to state any claim upon which relief may be granted.

*Discussion*

*The Fraud-Related Claims*

Three of plaintiffs' claims rest on suggestions of fraud by Bekkerman, viz. suggestions that he misrepresented the fair value of the paintings and the authenticity of the four paintings that plaintiffs claim are forgeries.  It therefore is appropriate to begin with the standards governing the legal sufficiency of averments of fraud.

To begin with, the complaint must allege the essential elements of fraud, viz. "a

---

[9]

*Id.* ¶ 21.

[10]

*Id.* ¶ 22.

[11]

*Id.* ¶¶ 23, 25.

misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."[12]   Moreover, these elements may not be alleged in conclusory fashion.

Fed. R. Civ. P. 9(b) requires that the circumstances of any fraud be pled with particularity.  The complaint therefore must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[13]   And while "[m]alice, intent, knowledge, and other conditions of a person's mind may be averred generally,"[14]  "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent."[15]   A plaintiff may accomplish this by "'(1) alleging facts to show that defendant[ ] had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"[16]

The problems with the fraud allegations in this pleading are manifold.

The gravamen of the fraud-based claims is two-fold.  Bekkerman allegedly

---

[12]

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996); *see also Herzfeld v. JPMorgan Chase Bank, N.A.*, 354 Fed. Appx. 488, 489 (2d Cir. 2009).

[13]

*Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

[14]

FED. R. CIV. P.  9(b).

[15]

*Acito*, 47 F.3d at 52.

[16]

*DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 372 (S.D.N.Y. 1999) (quoting *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)).

misrepresented that (1) four of the paintings were authentic and (2) the selling price of each was its fair market value.  Remarkable though it is, however, the second amended complaint nowhere alleges that Bekkerman knew that the four paintings whose authenticity plaintiffs question were forgeries or even that he knew and recklessly disregarded the existence of facts giving substantial reason to question their *bona fides*.  Similarly, it nowhere alleges that Bekkerman knew that the prices he allegedly represented as the artworks' fair market values in fact were not accurate or that he recklessly disregarded facts suggestive of such a conclusion, even assuming *arguendo* that there is any knowable "fair market value" for a painting different from what a willing seller will pay to a willing buyer, assuming that neither acts under duress.[17]  Thus, even if Rule 9(b) were ignored, the fraud-related claims all would fail because the complaint does not allege that Bekkerman knowingly or recklessly made any false statement as to authenticity or fair market value of the paintings.  But Rule 9(b) of course may not be ignored, and there are many deficiencies under that Rule as well.

---

[17]

This Court has pointed out previously that collateralized mortgage obligations ("CMOs") are traded between investors and dealers, frequently are illiquid, that their valuation therefore "is not a precise science," and that statements as to their value consequently are inherently statements of opinion.  *See, e.g., Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 361-64 (S.D.N.Y. 2007).  These comments are at least as applicable to paintings as to CMOs.  And an opinion is not actionable unless the person rendering it did not actually hold the stated opinion at the time the statement was made. *See, e.g., Fait v. Regions Fin. Corp.*, 712 F. Supp. 2d 117, 121 (S.D.N.Y. 2010), *aff'd*, 655 F.3d 105 (2d Cir. 2011); *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 494 (S.D.N.Y. 2010) (citing *Shields v. Citytrust Bancorp.*, 25 F.3d 1124, 1131 (2d Cir. 1994) ("A statement of reasons, opinion or belief by such a person when recommending a course of action to stockholders can be actionable under the securities laws if the speaker knows the statement to be false.") (in turn citing *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1094-96 (1991))); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 210 (S.D.N.Y. 2003); *see also AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 208 (2d Cir. 2000) (noting that common law fraud claim in New York requires a plaintiff to plead, *inter alia*, that defendant made "a misrepresentation or a material omission of fact which was false and known to be false by defendant").

First, plaintiffs speak of statements "at all times"[18] as to authenticity and value and of the alleged scheme "consist[ing] of numerous communications, telephone calls and personal visits to Europe," none of which is specified as to time, place, or specific content of the alleged communications.[19] We are left to wonder, for example, whether Bekkerman ever is alleged to have used the words "fair market value" or whether plaintiffs' instead claim that he said something that plaintiffs took to be a representation as to fair market value, assuming that Bekkerman said anything at all on the subject.

Second, the complaint alleges no facts as to the basis for the claim that the four alleged forgeries in fact are not paintings executed by the artists whom Bekkerman allegedly said painted them.

Third, no facts – as opposed to airy conclusions – are alleged that suggest that Bekkerman knew that any of the paintings was a forgery or that any was overpriced.[20]

Fourth, the pleading fails utterly to allege facts that give rise to a strong inference of *scienter*.

More could be said. But the foregoing suffices. The fraud-based claims all are insufficient as a matter of law.

---

[18]

Cpt. ¶ 21.

[19]

*Id.* ¶ 16.

[20]

The Court does not suggest by this formulation that there is any cause of action for overpricing in an arm's length transaction between a buyer and a seller.

*Contract Claims*

The breach of contract and breach of express warranty claims overlap.  Both allege that the seller breached by delivering four paintings that were not in fact painted by the artists represented.[21]  The contract cause of action alleges also that all of the paintings that were delivered had market values much lower than represented.[22]  Thus, the first claim for relief, which is denominated breach of contract, in fact is for breach of two express alleged warranties while the fifth claim for relief, denominated as one for breach of an express warranty, is redundant.

Insofar as the breach of warranty claim rests on the assertion that the seller warranted that the paintings were sold at fair market value when, in fact, they were sold at prices higher than fair market value, the claim is without merit.  As noted previously, there is no objective, discernable fair market value except perhaps for fungible assets traded on an efficient market.  By definition, the fair market value of an asset such as a work of art, a used car, a piece of real estate, and many other assets is "the price that a willing buyer and a willing seller would agree to in an arm's length transaction."[23]  At least in any context relevant here, fair market value "is the price for which the property would sell if there was a willing buyer who was under no compulsion to buy and a willing seller under no compulsion to sell."[24]  The fact that different persons have different opinions as to the fair market value of any given painting or other article does not make any of the opinions wrong

---

[21]

Cpt. ¶¶ 28, 30, 57-61

[22]

*Id.* ¶ 30.

[23]

*United States v. Broad. Music, Inc.*, 426 F.3d 91, 95 (2d Cir. 2005) (internal quotation marks omitted).

[24]

*Keator v. State*, 23 N.Y.2d 337, 339 (1968).

or inaccurate unless and until such a sale takes place. As the complaint alleges no basis for concluding that the fair market value of any of the paintings was anything other than the price that Savchuk willingly paid in a voluntary transaction with ABA, that aspect of the breach of warranty claims fails as a matter of law.

The alleged warranty as to authenticity is another matter. If in fact Bekkerman warranted that each of the paintings had been executed by a specified artist and if in fact plaintiffs can establish that four of them had been executed by others, then there would have been a breach of warranty. Defendants indeed do not contend otherwise. But they argue that the warranty claim must be dismissed as untimely.

The statute of limitations on contract claims involving the sale of goods, which applies to authenticity challenges in connection with the sale of art,[25] is four years from the tender of delivery.[26] Defendants argue that the complaint does not plead facts sufficient to demonstrate the timeliness of the breach of warranty claim. But the statute of limitations is an affirmative defense, and a plaintiff ordinarily has no obligation to plead facts establishing timeliness.[27]

Accordingly, the motion to dismiss the claim for breach of an express warranty of authenticity with respect to the four allegedly forged paintings must be denied.

---

[25]

See Rosen v. Spanierman, 894 F.2d 28, 31-33 (2d Cir. 1990).

[26]

N.Y. UNIF. COMM. CODE § 2-725(1).

[27]

Defendants' contention that Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), changed all that is entirely unpersuasive. Among other things, such a conclusion would abrogate FED. R. CIV. P. 8(c), which requires a defendant to plead the statute of limitations in its answer on pain of waiving the defense. See, e.g., Kropelnicki v. Siegel, 290 F.3d 118, 130 n.7 (2d Cir. 2002) ("The statute of limitations is an affirmative defense that is waived if not raised.") (citations omitted).

Case 1:11-cv-04409-AKK Document 28-2 Filed 12/30/11 Page 10 of 14

*Unjust Enrichment*

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."[28] However, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."[29]

Defendants, relying upon these principles, seek dismissal of the unjust enrichment claim on the theory that the complaint alleges a purchase and sale agreement for the paintings. Plaintiffs respond by asserting that they may plead the express contract and the quasi-contract claims in the alternative. But this latter assertion is unpersuasive. Where an express contract is conceded, as it is here, a plaintiff may not proceed also on a quasi-contract theory because it is foreclosed by the very existence of the express contract.[30] As plaintiffs concede that they "entered into a purchase and sale agreement"[31] with defendants to buy the paintings for $9,580,000, the unjust enrichment claim is foreclosed and must be dismissed.

---

[28]

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J. Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (internal quotation marks and citations omitted).

[29]

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *MJM Advertising, Inc. v. Panasonic Indus. Co.*, 294 A.D.2d 265, 741 N.Y.S.2d 874, 875 (1st Dept. 2002).

[30]

*E.g.*, *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000); *see Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997) (holding that unjust enrichment claim could not stand where an express contract existed, even though plaintiff asserted that the contract was ambiguous).

[31]

Cpt. ¶ 28; *see id.* ¶¶ 29-30.

11

*Negligent Misrepresentation*

Under New York law, a claim for negligent misrepresentation requires (1) carelessness in imparting words, (2) upon which others were expected to rely, (3) and upon which they did act or failed to act, (4) to their damage.[32]  Moreover, and relevant here, a negligent representation claim requires also that a  "special relationship" exist between the parties such that a duty of care is imposed on the defendant to convey accurate information to the plaintiff.[33] Plaintiffs were obliged to allege the existence of a "special relationship" that "suggests a closer degree of trust and reliance than that of the ordinary buyer and seller" to properly allege a negligent misrepresentation claim.[34]

Defendants argue that plaintiffs have not alleged the type of "special relationship" necessary for a negligent misrepresentation claim because plaintiffs were ordinary buyers and defendants were ordinary sellers. Plaintiffs, in contrast, argue that a special relationship existed here because of defendants' expertise and superior knowledge about Russian art.

Although plaintiffs allege that defendants had superior knowledge about the paintings, courts in this district have stated that "[a]llegations of superior knowledge or expertise in the art field are per se insufficient to establish the existence of a fiduciary relationship."[35]

---

[32]

*White v. Guarente*, 401 N.Y.S.2d 474, 478 (1977).

[33]

*Id.*

[34]

*Sanitoy, Inc. v. Shapiro*, 705 F. Supp. 152, 154 (S.D.N.Y. 1989) (quoting *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 63 (2d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988)).

[35]

*Granat v. Center Art Galleries–Hawaii Inc.*, No. 91 CIV. 7252, 1993 WL 403977, at *6 (S.D.N.Y. Oct. 6, 1993) (citing *Mechigian v. Art Capital Corp.*, 612 F. Supp. 1421, 1431 (S.D.N.Y. 1985)).

12

Plaintiffs allege nothing beyond defendants' expertise as a basis for any special relationship and, without more, plaintiffs' allegations are insufficient. Indeed, the alleged purchases appear to have been nothing more than arm's length transactions which did not give rise to a special relationship among the parties. Plaintiffs' negligent representation claim therefore must be dismissed.

Beyond the fact that the negligent representation claim fails because plaintiffs have not alleged that a special relationship existed between the parties, the claim cannot survive because it is not pled with the specificity required by Rule 9(b). When a negligent representation claim, like this one, is based on the same facts as a fraud claim, it is subject to the heightened pleading standard of Rule 9(b).[36] And as outlined above in the fraud claim section, the second amended complaint's allegations concerning defendants' representations are not presented with sufficient specificity to establish a claim for purposes of Rule 9(b).

Accordingly, plaintiffs' negligent misrepresentation claim fails as a matter of law.

*Mutual Mistake*

A claim for rescission based on mutual mistake requires, *inter alia*, that "both parties . . . shared the same erroneous belief as to a material fact, and their acts did not in fact accomplish their mutual intent."[37]

Defendants argue that plaintiffs cannot plead that *both* parties shared the same erroneous belief while, at the same time, asserting that defendants fraudulently induced them into

---

[36]

See, e.g., *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 583 (2d Cir. 2005) ("Such a [negligent misrepresentation] claim must be pled in accordance with the specificity criteria of Rule 9(b).").

[37]

*Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 46 (2d Cir. 1991).

13

purchasing paintings that allegedly were not authentic and overpriced. In response, plaintiffs contend that they are allowed to plead claims in the alternative pursuant to Rule 8(d)(2), which states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."[38]

Although the presence of fraud and mutual mistake claims in the same complaint may be inconsistent because it "impl[ies] that the mistake was not mutual . . . [p]laintiffs are certainly not prevented from pleading in the alternative that . . . they also entered into . . . agreements under [a] mistaken impression . . . ."[39] Moreover, the complaint here does not sufficiently plead fraud claims because, as noted above, the complaint nowhere alleges that defendants knew that the four paintings whose authenticity plaintiffs question were forgeries or that defendants knew that the prices allegedly represented as the artworks' fair market values in fact were not accurate.[40] Plaintiffs' mutual mistake claim therefore is permissible under Rule 8(d)(2).

*Conclusion*

For the foregoing reasons, AP's cross-motion for leave to amend [DI 16] is granted, the proposed second amended complaint is deemed served this day, and the defendants' motion to dismiss the first amended complaint is deemed applicable to the second amended complaint.

---

[38]

FED. R. CIV. P. 8(d)(2).

[39]

*See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 420 (S.D.N.Y. 2010).

[40]

The complaint alleges only (1) that "Defendants misrepresented to Savchuk that the Russian Paintings were authentic as to the claimed authorship, and also represented that the market value of the Russian Paintings was as represented by Bekkerman" and (2) that these misrepresentations were made "knowingly." Cpt. ¶¶ 37-38. Although these statements allege that defendants knowingly made misrepresentations, they do not allege that defendants knew that the four paintings with disputed authenticity were forgeries or that the values attributed to the paintings were not accurate. *See supra* page 6.

Case 1:11-cv-04409-AK Document 28-2 Filed 12/30/11 Page 14 of 14

14

Defendants' motion to dismiss [DI 11] is granted as to the second, third, fourth, fifth, sixth, and seventh claims for relief and so much of the first claim for relief as seeks recovery for alleged breach of an express warranty with respect to the fair market value of the paintings, all as set forth in the second amended complaint. The motion is denied in all other respects.

As it is not clear that plaintiffs are incapable of alleging fraud with regard to the claims about the authenticity of the four allegedly forged paintings, the dismissal of the third, fourth, and seventh claims is without prejudice to the filing, on or before December 12, 2011, of an amended complaint alleging fraud claims with respect to the authenticity of those four paintings.

SO ORDERED.

Dated:      November 28, 2011

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)